This appeal raises an issue of collateral estoppel. A consent judgment was entered in one of two consolidated cases. The trial court later granted summary judgment in the other case on the grounds that the consent judgment had disposed of both cases.
On September 25, 1978, Willie W. Leverette died, leaving a will. The executor named in the will, Kyle R. Leverette (a nephew of the testator), filed the will for probate. The probate court granted letters *Page 1231 
testamentary to Kyle Leverette and admitted the will to probate as the duly proved last will and testament of Willie W. Leverette.
On March 9, 1979, Melanee Leverette, the widow of the testator, filed a petition for removal of the estate from probate to circuit court and simultaneously filed a dissent from the will. The circuit clerk gave this action the docket number 79-148. We shall hereinafter refer to case number 79-148 as the estate action.
On August 24, 1979, the circuit court awarded the widow $50,000 as her distributive share of the estate and appointed commissioners to allot dower and homestead. On September 5 and October 12, the court entered orders confirming the reports of the commissioners. The executor filed a petition on October 26 for partial payment of executor's fees in the amount of $5,000. The court granted this petition on October 30. Further partial payments were made during the course of administration.
On July 18, 1980, the widow's attorneys withdrew as counsel. Her present counsel entered an appearance on August 28 and on that date filed a request for a hearing for the redetermination of the widow's distributive share as being all of the personal property of the estate, for a reconsideration of dower and homestead, and for an award of $2,000 as the widow's personal exemption under § 6-10-64, Code 1975.[1]
On November 26, 1980, the widow filed two subpoenas duces tecum to be served upon the First National Bank of Brundidge[2]
and the Brundidge Banking Company, requesting production of certified copies of all accounts in the name of Willie W. Leverette and/or Melanee Leverette. The information disclosed by the banks revealed that they had paid large sums of money into the estate from accounts owned jointly by Willie and Melanee Leverette. First National Bank of Brundidge had held $52,599 in joint accounts at the date of the testator's death. Brundidge Banking Company had held approximately $94,137.
On February 17, 1981, the executor filed a proposed settlement of the estate. On the same day, the court set April 22 as the day for a hearing on this settlement.
On March 24, the two banks filed a complaint naming the widow and the executor as defendants. The circuit clerk gave this case the docket number 81-80. We shall refer to it as the banks' action. The parties refer to it as a declaratory judgment action, but the face of the complaint reveals it to be an action for an accounting of the money paid by the banks to the estate, with a prayer that the court would adjust the equities.
The complaint raised the proposition that, if this money were paid to the widow in her capacity as surviving joint tenant of the accounts, her separate estate would be larger than the distributive share and dower interest which she had received. It recited that she would not be entitled to these statutory interests and that the value she had received thereunder, $50,000 and the use of the real property endowed to her for life, should be credited against the amount due from the estate back to the banks and from them to the widow. The complaint alleged that the $50,000 distributive share had been paid out of the money the estate received from the banks. The banks' complaint, therefore, raised issues regarding the money from the bank accounts, the $50,000 distributive share, and the rental value of the lands awarded as dower.
On April 14 the widow filed in the estate action a paper by which she requested a redetermination of her distributive share, offered to do equity, and requested permission to reserve the right to revoke her dissent from the will. This paper recited that the executor had wrongfully seized from the banks about $150,000 which belonged to the widow, that from this money he had wrongfully paid executor and attorney fees, that repayment of this money *Page 1232 
might constitute a separate estate requiring a redetermination of personal property distribution, and that the widow would return any overpayment found by the trial court.
On the same day, the widow filed in the banks' action an answer to the complaint, a counterclaim against the banks, and a cross-claim against the executor. The counterclaim recited that the banks' payments to the estate constituted conversion, negligence, and/or breach of contract, and a willful or wanton disregard of the widow's rights; sought the return of the sums paid to the estate, plus $100,000 for mental distress, loss of income, and attorney fees, and $500,000 punitive damages; and included a demand for a jury trial on the issue of liability and damages, but not on the issue of how much money the banks had wrongfully paid to the estate. The banks filed motions to dismiss the counterclaim, and later filed answers.
The widow's cross-claim in the banks' action recited that the executor wrongfully took approximately $150,000 of the widow's money from the banks; that he had refused to return the money to the widow; that he had received interest on the money; that he had wrongfully paid executor and attorney fees from the money; and that his actions constituted conversion, negligence, and/or breach of duties of an executor, with willful and wanton disregard of the widow's rights. The cross-claim sought $300,000 compensatory and $500,000 punitive damages, and demanded a jury trial except on the accounting aspect. The executor filed a motion to dismiss and later an answer.
Also on April 14, the executor filed a motion to consolidate the estate action and the banks' action. On April 17, the court ordered "that Civil Actions CV 81-80 and CV 79-148 are consolidated for trial and disposition" and that the April 22 settlement hearing in the estate action would be continued to a later date. The clerk's office continued to keep separate records in the two cases.
On April 22, the executor filed an answer to the banks' complaint, admitting the allegations thereof, and a cross-claim against the widow, demanding the same relief as prayed for in the complaint.
Also on April 22, 1981, the widow filed in the estate action a revocation of her dissent from the will, stating that the executor had concealed from her the fact that she owned the deposits at the bank and that if she were deemed to have a separate estate it would be to her advantage to take her share under the will. The record in the estate action contains no further significant filings until March 1983. The principal causes of this lapse appear to be the declining health of the widow and the parties' concentration on the banks' action.
The record in the banks' action reflects that on May 14, 1981, the executor filed a notice to the widow to appear for her deposition at a certain office on June 17. On June 1, the widow filed a motion for a summary judgment against the banks ordering them to pay her the money from the accounts plus interest. On June 4, she filed a notice that she would be unable to appear for the deposition, attaching her doctor's certificate stating that she "has severe pulmonary and cardiac problems and frequent episodes of mental confusion." The banks opposed her summary judgment motion on the grounds that they could not ascertain essential facts until they took her deposition.
On October 1, 1982, the widow filed a request that the trial court set a trial date in the banks' action. On November 3 she filed a motion seeking to require the banks to pay funds into court on the grounds that they admitted they were holding over $100,000 of her money but disputed the exact amount, and that she needed the money for basic support because she was residing in a nursing home at an expense of $1,225 per month. On December 10 she filed a motion to sever the banks' complaint from her counterclaim and cross-claim, on the grounds that she needed the money for support and care, that the banks' complaint contained no jury issues but her jury trial *Page 1233 
demands were delaying the adjudication on the complaint, and that resolving the issues on the complaint would simplify the issues and save time.
The court ordered on December 14, 1982, "that all pending motions in the above civil actions [the order included the styles and docket numbers of the banks' action and the estate action] will be argued and submitted for ruling on Wednesday, January 5, 1983, at 9:00 A.M." At this hearing, the parties reached an agreement, which they executed on February 4. On that date Irene Gilmore filed a probate court order appointing her as guardian of the widow, the parties entered into a settlement agreement, and the circuit court entered judgment on the settlement agreement.
The settlement agreement reads:
 "It is agreed by all parties, including Melanee G. Leverette, a person of unsound mind acting by and through her guardian, Irene M. Gilmore, as follows:
 "Against the sum of $183,192.68, including interest, which would otherwise be due from the plaintiff banks to Melanee G. Leverette, there is credited the sum of $65,750.00, leaving a balance presently due of $117,442.68.
 "The credit of $65,750.00 constitutes full restitution to the Estate of Willie W. Leverette for the distributive share and use of homestead and dower received by Melanee G. Leverette as the result of her dissent from the will, which dissent was unadvisedly made, being based upon a mutual mistake of fact; and, upon the setting aside by the Court of the judgments of the Court awarding homestead and dower to her, such dissent shall be withdrawn.
 "The parties jointly request the Court to issue its judgment approving this settlement setting aside the judgment of the Court in Civil Action No. CV 79-148 dated October 12, 1979 allotting homestead and the judgment of the Court in said action dated September 5, 1979 allotting dower, vesting full title to the land described therein in the estate of Willie W. Leverette and declaring the dissent to be withdrawn.
 "Immediately upon the issuance of such judgment Kyle R. Leverette, as executor of the Estate of Willie W. Leverette, will pay to Brundidge Banking Company $74,810.98 and to First National Bank of Brundidge $42,631.70, and the banks will pay the respective sums totaling $117,442.68 to the Clerk of the Court, to be by him disbursed to the guardian of Melanee G. Leverette.
 "Upon payment of the above sums by the banks to the Clerk, Civil Action No. CV 81-80, including all counterclaims and cross claims, shall be dismissed with prejudice, costs being taxed equally among the parties.
 "This agreement is subject to and shall become effective upon approval by the Court."
The trial court entered judgment on the agreement: it allowed the withdrawal of the dissent, set aside the awards of dower and homestead, vested the title to the lands in the estate, observed that the bank account sums had been paid to the clerk, and ordered the dismissal of the banks' action, including all counterclaims and cross-claims.
On March 15, 1983, the widow's guardian filed a petition in the estate action, requesting the following:
"1. A revised accounting of the estate.
 "2. A setting aside of the homeplace and two acres for the lifetime of the widow as provided in Article V of the Last Will and Testament.
 "3. An accounting on the income received from said homeplace.
 "4. A proposal for setting up Trust A and Trust B as directed under Article VI of the Last Will and Testament.
 "5. Payment of the personal property exemption to the widow in the amount of $2,000.00 under 6-10-64, Code of Alabama, 1975. Dorough vs. Johnson, 373 So.2d 1082.
 "6. An order forbidding the Executor from selling timber or otherwise reducing *Page 1234 
the value of the real estate which is part of the estate."
The will bequeaths all household and personal items to the widow; devises the couple's residence (this was not the house which had been allotted as homestead) as set out in paragraph 2, with remainder to the testator's brothers and sisters, per stirpes; and sets up two trusts to be established from the remainder of the estate. Trust A is to consist of
 "an amount equal to fifty per cent (50%) of the value of my adjusted gross estate as finally determined for Federal Estate Tax purposes, less the aggregate amount of marital deductions, if any, allowed for such tax purposes by reason of property or interest in property passing or which have [sic] passed to my wife otherwise than by the terms of this article of my will."
The trustee is instructed to pay to the widow the income and such portions of the principal as it deems necessary or desirable. She is to have a testamentary power of appointment over the principal remaining at her death. If she fails to effectively exercise this power, the principal is to pass into Trust B.
Trust B is to consist of the balance of the residuary estate, after payment of estate taxes. The Trustee is given the discretion whether to pay out or accumulate income. Income may be paid to the widow, brothers, sisters, nieces, or nephews of the testator, in the trustee's discretion. Upon the death of the widow, the trustee is to divide the principal among the brothers and sisters of the testator, per stirpes.
On May 19, 1983, the widow's guardian requested a hearing on her March 15 petition, adding a request for return of attorney and executor fees. The trial court set this petition for hearing on June 16. On June 15, the executor filed a motion to dismiss "the pleading filed herein by [the widow's guardian] because it fails to state a claim upon which relief can be granted."
On July 25, the widow's guardian filed another petition seeking property due her from the estate, including the personal property due her under the will, rents for the homeplace and the portion of the real estate which belongs in Trust A, interest on the $50,000 which she had credited back to the estate, and "[h]er share of interest earned by Executor on money mistakenly paid into estate." She contested (1) the past award of attorney fees and commissions calculated on the mistaken belief that the bank account sums belonged to the estate and (2) a debt owed to Brundidge Banking Company. Finally, she requested the division of the lands into the trusts and the settlement of "any other matters . . . which may arise."
The executor moved to dismiss this petition, and then moved for a more definite statement. The guardian made each item more specific. As to the interest on the $50,000, she averred that as part of the settlement, the widow credited interest on this money from October 1979 to January 1, 1983, to the estate, but that this money should be returned to her because she was entitled to the $50,000 during that period. As to the debt owed the bank, the guardian averred that she had learned that the executor had borrowed money to pay the settlement, and this was not a just debt of the estate.
The executor filed an answer on December 22 and a motion for summary judgment on January 27, 1984. In support of the motion, the executor stated in an affidavit that "All of the facts and issues raised in this petition and amendment thereto were raised, discussed, negotiated, and disposed of by the . . . JUDGMENT dated February 4, 1983 in case No. CV 81-80." He also stated that the widow's attorney was aware at the time of the settlement that the estate would have to borrow some of the money. Finally, his affidavit stated that the testator's will
 "provided that the property comprising TRUST A would consist of one-half of his adjusted gross estate less any property transferred to the wife outside the provisions of the will. Melanee G. Leverette has already received more than one-half of the adjusted gross estate." *Page 1235 
The affidavit included a copy of the estate tax return showing, as the principal elements of the gross estate, $165,500 worth of real estate, and $146,736 in jointly owned property.
The widow filed a response to the motion for summary judgment, stating, inter alia, that the parties to the settlement had agreed and announced in open court that the banks' action would be settled but not the estate action. It included affidavits to this effect. The response also stated that no interpretation of the trust provisions of the will had been made.
The widow also filed a proposed settlement with a hypothetical balance of $31,418.84. Most of this related to interest earned by the executor while holding the bank account money, the interest on the $50,000 which the widow had credited to the estate along with the $50,000, and rents received by the widow while holding the property awarded as dower and homestead. The proposed settlement also mentioned, however, that the trusts needed to be set up, that the legitimacy of the loan used to pay the settlement in the banks' action needed to be determined, and that the issue of whether real property should be sold needed to be addressed.
Finally, the widow filed one more petition, seeking reimbursement from the estate of the taxes she had paid on the dower and homestead property while she had held them.
After all these proceedings the trial court granted summary judgment for the estate:
 "Since February 1, 1983, the widow, Melanee G. Leverette, has filed several petitions which requested additional property and money from the estate of Willie Wilkerson Leverette. Kyle R. Leverette, as executor of the estate of Willie Wilkerson Leverette, filed an answer setting up defenses, among others, of release, res judicata, and payment. The executor also filed a MOTION FOR SUMMARY JUDGMENT. Said motion was based, in part, upon pleadings in a prior action, [the banks' action], and upon the affidavit of the executor in which the executor stated:
 "[Quoting that part of the affidavit stating that the issues in the petition had been settled in the banks' action.]
 "A comparison of the court file in Case No. CV 81-80 and the allegations of the petition now pending before this court shows clearly that the matters contained in the present petition were included in and disposed of by the SETTLEMENT AGREEMENT entered into by the parties which was adopted by this court. . . ."
The court entered a Rule 54 (b), A.R.Civ.P., order of finality, and the widow filed a timely notice of appeal to this Court.
The late Justice Bloodworth, writing for the Court, set out the elements of res judicata and collateral estoppel in Wheelerv. First Ala. Bank of Birmingham, 364 So.2d 1190, 1199 (Ala. 1978):
 "Res judicata and collateral estoppel (estoppel by judgment) are two separate rules or sets of rules for determining the conclusiveness of judgments.
 "The elements of res judicata are as follows: (1) prior judgment rendered by court of competent jurisdiction; (2) prior judgment rendered on the merits; (3) parties to both suits substantially identical; and (4) same cause of action present in both suits. If these elements are present, then the former judgment is an absolute bar to any subsequent suit on the same cause of action, including any issue which was or could have been litigated in the prior action.
 "Collateral estoppel operates where the subsequent suit between the same parties is not on the same cause of action. Requirements for collateral estoppel to operate are (1) issue identical to one involved in previous suit; (2) issue actually litigated in prior action; and (3) resolution of the issue was necessary to the prior judgment. If these elements are present, the prior judgment is conclusive as to those issues actually determined in the prior suit." *Page 1236 
(Citations omitted.) See Fisher v. Space of Pensacola, Inc.,461 So.2d 790 (Ala. 1984); Dominex, Inc. v. Key, 456 So.2d 1047
(Ala. 1984); Amoco Production Co. v. White, 453 So.2d 358 (Ala. 1984); Abel v. Waters, 373 So.2d 1125 (Ala.Civ.App. 1979).
The causes of action in the two suits were different. The banks' action requested an accounting of the money mistakenly paid from the joint accounts to the estate and an adjustment of the equities. The widow's claims in the estate action derived from the probate of the will. Nevertheless, some issues arose in both suits, so the question before this Court is whether collateral estoppel precludes the widow from raising the claims of her petitions in the estate action.
The executor's brief discusses the issue as though the judgment on the settlement agreement decided both the estate proceedings and the banks' action and treats the petitions filed after that judgment as a new action. The record does not support such a position. The judgment recites that the banks' action is dismissed, together with all counterclaims and cross-claims filed in that action, but makes no disposition of the estate action. The subsequent petitions and other papers filed by the widow bear the same docket number as the original petition for removal of the estate into circuit court. The status of the case might have been clearer if the widow had denominated her filings as amendments of prior filings (especially of the original dissent) or as motions. See Rule 7, A.R.Civ.P. The substance of these petitions appears in their texts, however, as the foregoing detailed account attempts to show.
The foremost issue that was not resolved in the settlement agreement is the widow's share passing under the will. This was squarely at issue in the estate action after the revocation of the dissent, but not at all in the banks' action. The widow filed her request to revoke the dissent at the same time the banks filed their action, so her assertion, that if the bank accounts were deemed her separate estate she preferred to take under the will, was pending in the estate action during the entire course of the banks' action. The issue of what property she took under the will could not have been litigated in the banks' action.
For the judgment on the settlement to resolve this issue, it would have had to include adjudicatory language relating to the widow's rights in the estate action. The settlement could have recited that the widow waived her right to take any further property under the will, or that she agreed to the dismissal of her claims against the estate, but it did not. "Where several actions are ordered to be consolidated for trial, each action retains its separate identity and thus requires the entry of a separate judgment. Ala.R.Civ.P. 42 (a) and Committee Comments."League v. McDonald, 355 So.2d 695, 697 (Ala. 1978).
The parties initially took this view of the settlement and judgment. The widow reactivated her claims under the will in the estate action within six weeks of the judgment dismissing the banks' action. The executor responded as though the widow's claims in the estate action were still pending. His motion for summary judgment, filed more than ten months after the widow's petition, appears to be an afterthought, not in keeping with the understanding of the parties to the settlement agreement.
For these reasons, the trial court erred in granting summary judgment against the widow on her claims for the testamentary life estate in the home and two acres, for the personal property due her under the will, for the establishment of the trusts, and for the claim of a $2,000 personal property exemption. The executor may be correct in saying that the listing of the joint property as a marital deduction in the estate tax return substantially decreases the amount of property passing into Trust A, but the will specifies that the trusts are to take effect as of the date of death. It therefore appears that the interest on the bank accounts earned after this date *Page 1237 
should not be counted against the amount to be placed in Trust A, so the issue is not ripe for summary judgment. In any event, the widow is a contingent beneficiary under Trust B, and the will requires the setting up of that trust for the widow's lifetime.
The properties received under the statutory rights of homestead, dower, and distributive share were at issue in the banks' action, however, because the widow offered to return these in the accounting necessitated by the discovery of her joint interest in the bank accounts. Because the settlement decided all of the rights and liabilities arising from the mistaken claim for and award of these statutory interests, the widow's various claims for rents, interest, and reimbursement of taxes must be deemed to be subsumed in that judgment and barred by collateral estoppel. Furthermore, the necessity of borrowing money to pay the settlement arose as a direct result of the consent judgment, so collateral estoppel applies to bar the widow from challenging this loan. As to executor and attorney fees, these are properly part of the estate action and were not decided in the consent judgment. Only issues actually decided in a former action are subject to collateral estoppel.
The trial court committed no error in granting summary judgment on the claims relating to the accounting of the bank deposits, the adjustments for the return of the properties taken pursuant to the dissent, and the loan for payment of the settlement. The trial court should have granted only partial summary judgment, however, because all of the widow's claims against the estate were not decided in the consent judgment. The judgment is therefore affirmed in part and reversed in part, and the cause remanded.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
TORBERT, C.J., and FAULKNER, BEATTY and HOUSTON, JJ., concur.
[1] Now repealed by 1982 Ala. Acts No. 82-399, p. 578.
[2] Kyle Leverette, the executor, was an officer of First National Bank of Brundidge, and was served the subpoena to that bank.