This is an appeal from the denial of a motion to intervene and a motion to vacate a consent judgment entered in an interpleader action. That judgment was entered following a settlement among various parties who claimed ownership of two certificates of deposit and the funds in a checking account held in the name of Cora Mae Huggins, who died intestate.
In 1980, Cora deposited funds in the First Bank of Grove Hill ("the Bank") and received two certificates of deposit in the name of "Cora Mae Huggins or Paul Huggins." Those certificates had a maturity date of November 16, 1985. In 1984 the probate court found Cora to be non compos mentis, and Paul was granted letters of guardianship over Cora's estate. After those letters were issued, Paul opened the checking account that is part of this dispute. That account was opened in the name of "Paul Huggins as guardian for Cora Mae Huggins." Approximately one year later, the certificates of deposit issued in 1980 matured and were renewed and issued in the name of "Paul Huggins, Guardian of Cora Mae Huggins." Paul maintains that he instructed the Bank to issue the certificates in his name individually, as well as in his capacity as Cora's guardian, and that he did not notice the Bank's failure to follow his instructions until after Cora's death in 1986.
Following Cora's death, the Bank filed an interpleader complaint pursuant to Rule 22, Ala.R.Civ.P., stating that a number of parties claimed ownership of the certificates and the checking account. Those funds totalled $136,527.95. The complaint named as defendants Paul Huggins, individually and as guardian of Cora's estate; the estate of Cora Mae Huggins; the estate of Jessie D. Huggins, Cora's deceased husband; and W.D. Wampler, president of the Alabama-Mississippi Conference of Seventh-Day Adventists, as the executor of Jessie D. Huggins's estate. An administrator ad litem was appointed to represent Cora's estate, and all of the parties entered into negotiations in an attempt to reach a settlement agreement concerning the division of the funds held by the Bank. These parties were able to reach an agreement, whereby Paul was to receive one of the certificates, in the amount of $63,318.24; Cora's estate was to receive the second certificate, in the amount of $63,318.24; and the Alabama-Mississippi Conference of Seventh-Day Adventists was to receive the funds held in the checking account, a sum of $9,891.47.
A hearing was held in the circuit court, and the proposed settlement was read in open court. A number of Cora's heirs were present at the hearing, and Johnny R. Sanders, a nephew of Cora's, expressed dissatisfaction with the proposed settlement. Following the hearing, the circuit court entered an order approving the proposed settlement. Sanders then filed a motion to intervene and to set aside the court's judgment. That motion was denied, and Sanders appeals.
The substance of Sanders's argument is that the consent judgment entered by the trial court would bar the future litigation of controversies that he contends exist between Paul and Cora's estate because of the operation of the doctrines of res judicata, collateral estoppel, and the compulsory counterclaim rule, Rule 13(a), Ala.R.Civ.P. Although Sanders readily admits that no action has been filed by the representative of Cora's estate against Paul, either in his capacity as the guardian of her estate or in his individual capacity, he argues that potential controversies exist concerning the validity of a deed conveying property from Jessie Huggins to Paul and concerning Paul's alleged failure to perform duties he was required to perform as the guardian of Cora's estate, including the filing of partial and final settlements. Sanders filed his motion to intervene as an heir of Cora but was not joined by the administrator of Cora's estate. Therefore, this opinion will be confined to consideration of potential actions that Sanders would have standing to bring and it will not consider potential actions that could be brought by the administrator of Cora's estate or by any other party. *Page 872 
This Court set out the elements of res judicata and collateral estoppel in Leverette ex rel. Gilmore v. Leverette,479 So.2d 1229 (Ala. 1985):
 " 'Res judicata and collateral estoppel (estoppel by judgment) are two separate rules or sets of rules for determining the conclusiveness of judgments.
 " 'The elements of res judicata [or claim preclusion] are as follows: (1) prior judgment rendered by court of competent jurisdiction; (2) prior judgment rendered on the merits; (3) parties to both suits substantially identical; and (4) same cause of action present in both suits. If these elements are present, then the former judgment is an absolute bar to any subsequent suit on the same cause of action, including any issue which was or could have been litigated in the prior action.
 " 'Collateral estoppel [or issue preclusion] operates where the subsequent suit between the same parties is not on the same cause of action. Requirements for collateral estoppel to operate are (1) issue identical to one involved in previous suit; (2) issue actually litigated in prior action; and (3) resolution of the issue was necessary to the prior judgment. If these elements are present, the prior judgment is conclusive as to those issues actually determined in the prior suit.' (Citing cases.)"
Leverette, supra, at 1235-36 (quoting Wheeler v. First AlabamaBank of Birmingham, 364 So.2d 1190, 1199 (Ala. 1978)).
We find that any potential action brought by Sanders concerning the validity of the deed conveying real property from Jessie Huggins to Paul would not be barred by res judicata. The consent judgment concerned only the ownership of funds held by the Bank, and there is no indication that the validity of the deed was ever an issue brought to the court's attention. Although a consent judgment is generally entitled to the same conclusive effect as a judgment on the merits, see 50 C.J.S. Judgments § 705 (1947), all of the elements of res judicata must be present before that doctrine will act as a bar. An action filed by Sanders in the future to contest the validity of the deed would constitute an entirely new cause of action and would not involve "substantially identical" parties. Therefore, the third and fourth elements of res judicata, as set out in Leverette, supra, would be absent, and that doctrine would not act as a bar. Likewise, any action brought by Sanders against Paul concerning his alleged failure to perform his statutory duties as the guardian of Cora's estate would be subject to the same analysis and result.
This Court also finds that any potential action by Sanders concerning either of the above issues would not be precluded by the doctrine of collateral estoppel. Any such action would involve an issue or issues that clearly would not be identical to the issues present in the interpleader action filed by the Bank, and thus would fail to meet the first requirement for the operation of collateral estoppel. Absent that "identity of issues," the doctrine does not act as a bar to future litigation. Leverette, supra.
Sanders's final contention is that the compulsory counterclaim rule would operate to bar future litigation concerning the validity of the deed and would prevent him from bringing an action against Paul for an accounting. Rule 13(a), Ala.R.Civ.P., states in relevant part:
 "A pleading shall state as a counterclaim any claim which at the time of serving the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. . . ."
The purpose of Rule 13(a) is "to avoid circuity of actions, and to require assertion as counterclaims of those claims which are likely to turn on the same facts as the original claim." Committee Comments, Rule 13; Ex parte Fletcher, 429 So.2d 1041,1044 (Ala. 1982). Failure to properly assert a compulsory counterclaim in the original proceeding bars future litigation by the parties on that claim. However, the determination of whether a compulsory counterclaim exists is made at the time at which the potential counterclaimant must *Page 873 
file an answer. Brooks v. Peoples National Bank of Huntsville,414 So.2d 917, 920 (Ala. 1982). Therefore, the rule can logically be applied only to parties who were parties to the original proceeding. See Brooks, supra; see also 6 C. Wright and A. Miller, Federal Practice and Procedure, § 1404 at 4, n. 48.1 (1989 Supp.). Sanders was never a party to the action that resulted in the consent judgment and could not be barred by that judgment from filing an action against Paul. We recognize that a different result might be reached if Sanders's motion to intervene had been granted, but consideration of that possible result is not necessary.
Without commenting on the merits of any claim Sanders might have against Paul, this Court finds that none of the potential claims he expresses concern about would be barred by res judicata, collateral estoppel, or the compulsory counterclaim rule. Therefore, the trial court's denial of his motion to intervene will not impair his ability to protect any interest he may have in Cora's estate. In addition, the trial court's denial of Sanders's motion to vacate the consent judgment was not an abuse of discretion, and it will not be disturbed.Grigsby v. Liles, 274 Ala. 67, 70, 147 So.2d 846, 851 (1962). The judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur.