Rel: May 24, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of Southern Reporter. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in Southern Reporter.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

_____

### SC-2023-0515

_____

**Ex parte National Trust Insurance Company**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Timothy L. Bozeman**

**v.**

**Phoenix II Contracting, LLC, et al.)**

**(Pike Circuit Court: CV-20-85)**

WISE, Justice.

The petitioner, National Trust Insurance Company ("National Trust"), petitions this Court for a writ of mandamus directing the Pike Circuit Court ("the circuit court") to vacate its June 7, 2023, order

denying its motion to dismiss the third-party complaint Whaley Construction Company, Inc. ("Whaley"), filed against it and to enter an order dismissing Whaley's third-party complaint.

Facts and Procedural History

Lockheed Martin Corporation ("Lockheed Martin") hired Whaley as a general contractor on a project at a Lockheed Martin facility in Troy. Smith's Inc. of Dothan ("Smith's of Dothan") was a subcontractor hired to install an HVAC system on the project, and Phoenix II Contracting, LLC ("Phoenix II"), was a subcontractor hired to install the roofing on the project. Smith's of Dothan's subcontract with Whaley provided that Smith's of Dothan would name Whaley and Lockheed Martin as additional insureds on its liability policies. National Trust issued Smith's of Dothan a commercial-package policy and a commercial-liability umbrella policy ("the subject policies") through Harmon-Dennis-Bradshaw, Inc. ("HDB"). Whaley and Lockheed Martin were additional insureds under the subject policies. The subject policies were in effect from October 1, 2020, to October 1, 2021.

On November 20, 2020, Timothy L. Bozeman was working as a roof laborer on the Lockheed Martin project when he fell through an opening

in the roof and was seriously injured.   On December 15, 2020, Bozeman

sued Phoenix II and various fictitiously named defendants in the circuit

court ("the state-court action").   In his original complaint, Bozeman

alleged that, upon information and belief, he was an employee of Phoenix

II and was working within the line and scope of his employment at the

time of his injuries.  Bozeman asserted a worker's compensation claim, a

"fictitious co-employee claim,"  and "negligence, wantonness, willfulness,

recklessness claims against the fictitious third party defendants."

Bozeman subsequently filed amended complaints and added South

East Personnel Leasing, Inc. ("South East"), Lockheed Martin, Whaley,

and Smith's of Dothan as defendants.  On April 21, 2021, Bozeman died

from his injuries.  On July 13, 2021, Joseph Edward Parish, Jr., filed a

fourth amended complaint alleging that Bozeman had died on April 21,

2021, and that he had been appointed as the personal representative of

Bozeman's estate ("the estate").  In the fourth amended complaint, Parish

asserted that, upon information and belief, Bozeman was an employee of

South East and was working within the line an scope of his employment

at the time of his injuries; that Bozeman was working on the project site

for Phoenix II; that Phoenix II was a subcontractor of Central Alabama

Metal & Roofing Company ("Central Alabama"); that Whaley was the general contractor for the project; and that the job site "was and is owned, operated by, leased to, and/or controlled by" Lockheed Martin. Parish asserted:

> "COMES NOW the Plaintiff, by and through his undersigned counsel of record and pursuant to Rule 15 of the Alabama Rules of Civil Procedure, and amends the original Complaint, First Amended Complaint, Second Amended Complaint, and Third Amended Complaint in toto, to substitute Joseph Edward Parish, Jr., as personal representative of the Estate of Timothy L. Bozeman, deceased for Timothy L. Bozeman, individually, and to assert a claim for any and all damages recoverable under Alabama's Wrongful Death Statute in addition to the claims and damages previously asserted. By substituting and asserting the claim for wrongful death, Plaintiff Joseph Edward Parish, Jr., as personal representative of the Estate of Timothy L. Bozeman, deceased, specifically preserves and maintains Timothy L. Bozeman's claim(s) [for] personal injury damages, i.e. medical expenses and lost wages, physical pain and suffering, mental anguish, and emotional distress."

The fourth amended complaint included a worker's compensation claim; a "fictitious co-employee claim"; "negligence, wantonness, willfulness, recklessness claims against all named defendants and the fictitious third party defendants"; and a "negligence, wantonness, willfulness, recklessness premises liability claim against defendant Lockheed Martin and/or the fictitious third party defendants."

4

On July 16, 2021, National Trust commenced a declaratory-judgment action in the Northern Division of the United States District Court for the Middle District of Alabama ("the federal-court action"). The complaint in the federal-court action named Smith's of Dothan, Whaley, Lockheed Martin, and the estate as respondents and included the following factual allegations:

> "25. A dispute has arisen as to whether Respondents Smith's [of Dothan], Whaley, and Lockheed [Martin] are entitled to a defense and indemnification as to the claims asserted in the Underlying Lawsuit. National Trust asserts that, based on the terms, conditions, and exclusions contained in the [subject] policies, Respondents Smith's [of Dothan], Whaley, and Lockheed [Martin] are not entitled to a defense in the underlying lawsuit or indemnification against settlement, award, or judgment therefrom.

> "26. Even though the Conditions of the Subject Policies have not been met, National Trust is defending Smith's [of Dothan] and Lockheed [Martin] under a full Reservation of Rights, and has offered to defend Whaley under a Reservation of Rights."

National Trust further alleged that the subject policies required "Smith's [of Dothan], Whaley, and Lockheed [Martin] to notify National Trust 'as soon as practicable of an "occurrence" or an offense which may result in a claim'"; that Smith's of Dothan had waited four months and three weeks, that Whaley had waited five months, and that Lockheed Martin

5

had waited six months to notify National Trust of the occurrence; and that the notification delays were unreasonable and did not comply with the express conditions of the subject policies. Thus, National Trust asserted that "there no insurance coverage under the Subject Policies to defend and/or indemnify Respondents Smith's [of Dothan], Whaley, and Lockheed [Martin] in the Underlying Lawsuit, for the reasons stated, and seeks a declaration accordingly."

On August 12, 2021, Lockheed Martin filed its "Answer to the Fourth Amended Complaint and Cross-Claim" in the state-court action. Lockheed Martin stated a cross-claim for indemnification against Whaley and other entities.

On November 18, 2021, Whaley filed its answer to National Trust's declaratory-judgment complaint in the federal-court action.

On October 20, 2022, National Trust filed an amended complaint in the federal-court action in which it added HDB as a respondent and dismissed Lockheed Martin as a respondent. The amended complaint in the federal-court action included the following allegations:

> "25. After this declaratory judgment action was filed, Smith's [of Dothan] represented that it forwarded to its insurance agent, HDB, the citations OSHA issued against Smith's [of Dothan] related to the purported occurrence

6

sometime after March 24, 2021. While this communication was made more than four months after the purported occurrence, HDB did not forward this information to National Trust upon receipt.

"....

"27. Even though the Conditions of the Subject Policies have not been met, National Trust is defending Smith's [of Dothan] under a full Reservation of Rights, and offered to defend Whaley under a Reservation of Rights.

"28. Lockheed [Martin] has been dismissed from the Underlying Lawsuit and, based on information and belief, has assigned certain rights to Whaley."

On November 14, 2022, Whaley filed its answer to the amended complaint in the federal-court action.

On April 14, 2023, Whaley filed a third-party complaint against National Trust and Continental Insurance Company ("Continental") in the state-court action.[1] The third-party complaint alleged claims of breach of contract and bad-faith refusal to pay against National Trust and Continental. The third-party complaint alleged, in pertinent part:

"4. This matter arises out of an incident which occurred during construction at the LM LRSS AUR Facility owned by Lockheed Martin ..., by which Timothy L. Bozeman (hereinafter 'Bozeman') was injured and subsequently died.

---

[1]The third-party complaint alleged that Continental was the general-liability insurer for Central Alabama.

7

"5. Whaley was added to the general liability insurance policies issued by National Trust and [Continental] to their insureds as an Additional Insured, provided the same insurance coverage as was afforded to their insureds.

"6. Following the Bozeman accident, Bozeman filed suit against both Lockheed Martin … and Whaley.

"7. Whaley demanded that the Insurers defend Whaley pursuant to its status as Additional Insured.

"8. National Trust has agreed to defend Whaley pursuant to a Reservation of Rights but has not agreed to indemnify Whaley. [Continental] has denied Whaley's demands for defense and indemnity.

"9. If Whaley is found liable for the injuries and death of Bozeman, the Insurers are required to indemnify Whaley from any judgment which may be entered against it or to indemnify Whaley from any settlement of Bozeman's claims.

"10. In addition to indemnifying Whaley from any judgment or settlement related to the Bozeman accident, the Insurers are obligated to defend Whaley from the allegations of the Bozeman suit. Therefore, the Insurers are obligated to reimburse Whaley for amounts it has incurred in defending itself to date and to reimburse Whaley for amounts it incurs going forward in defending itself.

"11. Whaley contracted with Lockheed Martin … to defend and indemnify Lockheed [Martin] from the allegations of the Bozeman suit. Whaley's contract with Lockheed [Martin] is an 'insured contract' as defined in the Insurers' general liability policies.

"12. Whaley demanded that the Insurers provide insurance coverage to Whaley for indemnifying Lockheed [Martin] its defense costs. The Insurers refused.

8

"13. Whaley provided notice to the Insurers that it was going to reimburse Lockheed [Martin] for its defense costs and provided the Insurers an opportunity to do so prior to Whaley doing so.

"14. Whaley has indemnified Lockheed [Martin] for its defense costs when the Insurers had an obligation to do so pursuant to the terms of their insurance policies.

"15. The Insurers had no arguable, debatable, or legitimate reason to refuse to defend and indemnify Whaley outright or without any reservation of rights.

"16. The Insurers have breached their contracts by not providing insurance coverage to Whaley and to defend and indemnify Whaley as Additional Insured under their policies of insurance.

"17. Because of the Insurers' breach of contract, Whaley has incurred and will continue to incur defense costs, defending itself and is exposed to a judgment being entered against it."

In its breach-of-contract claim, Whaley alleged, in pertinent part:

"19. The Insurers agreed to defend and indemnify Whaley. [National] Trust has agreed to defend Whaley under a reservation of rights. [Continental] refused to defend and indemnify Whaley.

"20. In the event that Whaley enters into a settlement to settle the Bozeman claims, the Insurers are obligated to indemnify Whaley for any such settlement.

"21. In the event that Whaley is found liable for the Bozeman claims, the Insurers are obligated to indemnify Whaley from any judgment entered against it.

9

"22. The Insurers were obligated to defend both Lockheed [Martin] and Whaley and are, therefore, obligated to reimburse Whaley for amounts already incurred in the defense of the Bozeman suit and to reimburse Whaley for what it paid Lockheed [Martin] to indemnify Lockheed [Martin] for its defense costs and the amounts incurred in the future defense of the Bozeman suit.

"23. Because Whaley's contract with Lockheed [Martin] was and is 'an insured contract,' the Insurers were obligated to pay Lockheed [Martin] for its defense costs, and are now obligated to pay Whaley for what it paid Lockheed [Martin] to indemnify Lockheed [Martin].

"WHEREFORE, Whaley demands judgment against National Trust … and [Continental] in such sum as would indemnify Whaley for any judgment or settlement of the Bozeman claims, reimburse Whaley for the cost of defense, both past, present and future, of Lockheed [Martin] and Whaley to the Bozeman claims, interest, costs, and attorney's fees."

In its bad-faith claim, Whaley asserted:

"25. The Insurers had no arguable, debatable, or legitimate reason to fail and refuse to defend Whaley without reservation of rights or outright and to fail and refuse to indemnify Whaley for any settlement with Bozeman or any judgment entered against Whaley.

"26. Whaley has been damaged and continues to be damaged by the Insurers' bad faith. Whaley has incurred and will continue to incur defense costs in defending itself from the Bozeman suit and is exposed to a judgment being rendered against it. Whaley received a demand from Lockheed [Martin] to defend and indemnify Lockheed [Martin] when the Insurers had the duty and obligation to

10

defend and indemnify Lockheed [Martin]. Thus, Whaley was named in a cross-claim filed by Lockheed [Martin] because of the Insurers' refusal to defend and indemnify Lockheed [Martin]. Whaley had to defend itself from the allegations of the cross-claim and to make payment to Lockheed [Martin] to indemnify Lockheed [Martin] for its defense costs.

"WHEREFORE, Whaley demands judgment against National Trust … and [Continental] in such sum as would indemnify Whaley for any judgment or settlement of the Bozeman claims, reimburse Whaley for the cost of defense, both past, present and future, of Lockheed [Martin] and Whaley to the Bozeman claims, interest, costs, and attorney's fees, together with punitive damages to punish the Insurers for their bad faith refusal."

On May 4, 2023, National Trust filed a motion to dismiss in the state-court action. In the motion, National Trust asked the circuit court "to reconsider its previous Order … dated April 21, 2023, granting Whaley's motion for leave to file a third-party complaint against [National Trust] and further move[d] pursuant to Rule 12(b)(6) of the Alabama Rules of Civil Procedure to dismiss both of Whaley's claims asserted against [National Trust] in the Third-Party Complaint." In its motion, National Trust asserted that Whaley's claims against it were due to be dismissed "because they were compulsory counterclaims that Whaley was required to file in the federal[-court] action pursuant to § 6-5-440, Ala. Code 1975."

11

On May 31, 2023, Whaley filed a motion in the federal-court action asking the federal court to dismiss that action or, in the alternative, to stay that action pending the conclusion of the state-court action. On June 20, 2023, the federal court entered an order denying that motion.

On June 7, 2023, the circuit court entered an order denying National Trust's motion to dismiss the third-party complaint. National Trust subsequently filed a petition for a writ of mandamus asking this Court to direct the circuit court to enter an order dismissing National Trust from the state-court action.[2]

## Standard of Review

"'The standard of review applied to a petition seeking the issuance of a writ of mandamus is well settled:

"'"Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by

---

[2]After this Court ordered answer and briefs, the federal court entered a final judgment in the federal-court action. The federal court found that Whaley and Smith's of Dothan had not "unreasonably delayed giving notice" of the occurrence to National Trust and that National Trust owed a defense and indemnification to Smith's of Dothan and Whaley. National Trust subsequently appealed the federal court's judgment to the United States Court of Appeals for the Eleventh Circuit.

a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court."'

"Ex parte Caremark Rx, LLC, 229 So. 3d 751, 756 (Ala. 2017)(quoting Ex parte Integon Corp., 672 So. 2d 497, 499 (Ala. 1995)).

"....

"... 'Mandamus is the appropriate remedy to correct a trial court's failure to properly apply § 6-5-440[, Ala. Code 1975].' Ex parte J.E. Estes Wood Co., 42 So. 3d 104, 108 (Ala. 2010). 'When the facts underlying a motion filed pursuant to § 6-5-440 are undisputed, as is the case here, our review of the application of the law to the facts is de novo.' Ex parte Metropolitan Prop. & Cas. Ins. Co., 974 So. 2d 967, 969 (Ala. 2007)."

Ex parte Nautilus Ins. Co., 260 So. 3d 823, 826-27 (Ala. 2018).

Discussion

National Trust argues that the circuit court erroneously denied its motion to dismiss Whaley's third-party complaint against it in the state-court action. Specifically, it contends that the circuit court should have dismissed Whaley's complaint against it in the state-court action pursuant to § 6-5-440, Ala. Code 1975, because Whaley's claims against it are compulsory counterclaims in the federal-court action that was pending at the time Whaley filed its third-party complaint in the state-court action.

13

A.

With regard to Whaley's breach-of-contract and bad-faith claims arising out of National Trust's refusal to indemnify it for the amount Whaley had paid to settle Lockheed's Martin's indemnity claim against it, this Court addressed a similar issue in Nautilus, supra. In that case, Precision Sand Products, LLC ("Precision"), had a commercial general-liability policy that it had purchased from Nautilus Insurance Company ("Nautilus") through Lyon Fry Cadden Insurance Agency, Inc. ("LFC"), which was an insurance broker. In March 2016, Terry Williams sued Precision in the Baldwin Circuit Court for injuries he had allegedly suffered on Precision's property during the time that the commercial general-liability policy was in effect. Williams subsequently amended the complaint and added his wife, Zandra Williams, as a plaintiff. Precision demanded that Nautilus defend and indemnify it against the Williamses' claims pursuant to the terms of the commercial general-liability policy. Nautilus agreed to defend Precision under a reservation of rights.

Nautilus filed a declaratory-judgment action against Precision and the Williamses in the United States District Court for the Southern

District of Alabama on July 3, 2017. Nautilus sought a judgment declaring that it was not obligated to defend and indemnify Precision based on an exclusion in the commercial general-liability policy. On October 13, 2017, Precision filed a "crossclaim complaint" against Nautilus and LFC in the Williamses' state action.

> "Precision asserted the following claims against both Nautilus and LFC: (1) a claim seeking a judgment declaring that Nautilus and LFC are obligated to defend and indemnify Precision against the Williamses' claims; (2) an abnormal bad-faith claim; (3) a bad-faith-failure-to-settle claim; (4) a breach-of-the-enhanced-duty-of-good-faith claim; (5) a fraud claim, alleging that Nautilus and LFC misrepresented to Precision that the policy provided coverage for claims such as the Williamses'; and (6) a negligence claim, alleging that Nautilus and LFC 'had a duty to sell an insurance policy to Precision … that provides coverage for its business operations and for any potential claims [to which it] might be exposed ….'"

260 So. 3d at 826. Nautilus subsequently filed a motion to dismiss Precision's claims against it in the Williamses' state action, arguing "that Precision's claims against it were compulsory counterclaims that Precision was required to file in the federal action pursuant to § 6-5-440, Ala. Code 1975, the abatement statute." Id. LFC filed a motion to dismiss Precision's claims against it in the Williamses' state action, asserting that Precision had failed to state a claim against LFC upon which relief could be granted. Alternatively, LFC asserted that

15

Precision's claims against it were due to be dismissed pursuant to Rule 19, Ala. R. Civ. P., based on LFC's allegation that Nautilus was an indispensable party to Precision's claims against LFC. The state trial court denied the motions to dismiss filed by Nautilus and LFC, and Nautilus and LFC filed separate petitions for writs of mandamus asking this Court to direct the trial court to vacate its orders denying their motions to dismiss and to enter orders dismissing the claims against them.

In addressing Nautilus's petition for writ of mandamus, this Court stated, in pertinent part:

"In its petition to this Court, Nautilus makes the same argument it made in its motion to dismiss the state action, i.e., that it is entitled to a dismissal from the state action under § 6-5-440[, Ala. Code 1975,] because, Nautilus says, Precision's claims against it are compulsory counterclaims in the federal action, which was pending when Precision commenced the state action. 'Mandamus is the appropriate remedy to correct a trial court's failure to properly apply § 6-5-440.' Ex parte J.E. Estes Wood Co., 42 So. 3d 104, 108 (Ala. 2010). 'When the facts underlying a motion filed pursuant to § 6-5-440 are undisputed, as is the case here, our review of the application of the law to the facts is de novo.' Ex parte Metropolitan Prop. & Cas. Ins. Co., 974 So. 2d 967, 969 (Ala. 2007).

"Section 6-5-440 provides:

"'No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times.'

"Regarding the operation of § 6-5-440, this Court has stated:

"'This Code section, by its plain language, forbids a party from prosecuting two actions for the "same cause" and against the "same party." This Court has previously held that an action pending in a federal court falls within the coverage of this Code section:

"'"'The phrase "courts of this state," as used in § 6-5-440, includes all federal courts located in Alabama. This Court has consistently refused to allow a person to prosecute an action in a state court while another action on the same cause and against the same parties is pending in a federal court in this State.'"

"'Ex parte University of South Alabama Found., 788 So. 2d 161, 164 (Ala. 2000) (quoting Weaver v. Hood, 577 So. 2d 440, 442 (Ala. 1991) (citations in Weaver omitted in University of South Alabama)). Additionally, a compulsory counterclaim is considered an "action" for purposes of § 6-5-440. Penick v. Cado Sys. of Cent. Alabama, Inc., 628 So. 2d 598, 599 (Ala. 1993). As this Court has noted:

17

"'"This Court has held that the obligation ... to assert compulsory counterclaims, when read in conjunction with § 6-5-440, Ala. Code 1975, which prohibits a party from prosecuting two actions for the same cause and against the same party, is tantamount to making the defendant with a compulsory counterclaim in the first action a 'plaintiff' in that action (for purposes of § 6-5-440) as of the time of its commencement. See, e.g., Ex parte Parsons & Whittemore Alabama Pine Constr. Corp., 658 So. 2d 414 (Ala. 1995); Penick v. Cado Systems of Cent. Alabama, Inc., 628 So. 2d 598 (Ala. 1993); Ex parte Canal Ins. Co., 534 So. 2d 582 (Ala. 1988). Thus, the defendant subject to the counterclaim rule who commences another action has violated the prohibition in § 6-5-440 against maintaining two actions for the same cause."

"'Ex parte Breman Lake View Resort, L.P., 729 So. 2d 849, 851 (Ala. 1999). See also University of South Alabama Found., 788 So. 2d at 165 (holding that a party in an action pending in a federal court was subject to the counterclaim rule and thus violated § 6-5-440 by commencing another action in a state court); Ex parte Parsons & Whittemore Alabama Pine Constr. Corp., 658 So. 2d 414 (Ala. 1995) (holding that the prosecution in a subsequent action of claims that had been compulsory counterclaims in a previously filed declaratory-judgment action violated § 6-5-440).'

"Ex parte Norfolk S. Ry., 992 So. 2d 1286, 1289-90 (Ala. 2008).

18

"In this case, Precision is a defendant and Nautilus a plaintiff in the federal action, which undisputedly had been filed and was pending when Precision commenced the state action. Thus, as we explained in <u>Norfolk</u>, if Precision's claims against Nautilus in the state action are compulsory counterclaims in the federal action, then Precision is a 'plaintiff' in the federal action for purposes of § 6-5-440 and, as such, is precluded under that statute from asserting those claims in a later-filed action, i.e., the state action. <u>See</u> <u>Ex parte Brooks Ins. Agency</u>, 125 So. 3d 706, 710 (Ala. 2013) (holding that § 6-5-440 mandated the dismissal of an insured's claims filed in a state-court action because those claims were compulsory counterclaims in the insurer's first-filed, declaratory-judgment action in federal court); and <u>Ex parte Canal Ins. Co.</u>, 534 So. 2d 582 (Ala. 1988) (same). …

"….

"Nautilus argues that Precision's claims against it are compulsory counterclaims in the federal action because, Nautilus says, both its claims in the federal action and Precision's claims in the state action

"'arise out of Nautilus's issuance of the [p]olicy to Precision, Precision's demand that Nautilus defend and indemnify Precision against the Williamses' claims, and Nautilus's provision of a defense under reservation of rights. Hence, the claims arise out of the same transaction or occurrence and are based on the same operative facts.'

"Petition, at 15-16. We agree with Nautilus.

"In determining whether a counterclaim is compulsory, this Court applies the logical-relationship test.

19

"'"A counterclaim is compulsory if there is any logical relation of any sort between the original claim and the counterclaim." Committee Comments on 1973 adoption of Rule 13, [Ala. R. Civ. P.,] ¶ 6. Under the logical-relationship standard, a counterclaim is compulsory if "(1) its trial in the original action would avoid a substantial duplication of effort or (2) the original claim and the counterclaim arose out of the same aggregate core of operative facts." Ex parte Canal Ins. Co., 534 So. 2d 582, 584 (Ala. 1988) (quoting Brooks v. Peoples Nat'l Bank of Huntsville, 414 So. 2d 917, 919 (Ala. 1982)). In determining whether the claims "arose out of the same aggregate core of operative facts," this Court must determine whether "(1) the facts taken as a whole serve as the basis for both claims or (2) the sum total of facts upon which the original claim rests creates legal rights in a party which would otherwise remain dormant." Canal Ins., 534 So. 2d at 584.'

"Ex parte Cincinnati Ins. Cos., 806 So. 2d 376, 380 (Ala. 2001).

As noted above, the crux of the federal action is Nautilus's obligations, if any, and Precision's rights, if any, under the policy. Likewise, Precision's declaratory-judgment claim and its claims of abnormal bad faith, bad-faith failure to settle, breach of the enhanced duty of good faith, fraud, and negligence are based upon either Nautilus's alleged refusal to perform what, Precision says, are Nautilus's duties under the policy or Nautilus's alleged misconduct in issuing the policy. Thus, the policy is the nucleus of each party's claims, and it is the facts concerning Nautilus's issuance of the policy, the facts concerning the manner in which Nautilus is handling Precision's claim under the policy, and the interpretation of relevant terms of the policy that 'serve as the basis for' the parties' claims, or, put differently, the claims all '"arose out of the same aggregate core of operative facts."' Cincinnati Ins.

20

Cos., 806 So. 2d at 380 (quoting Canal Ins., 534 So. 2d at 584). As a result, litigating the parties' claims in the same forum would avoid 'a substantial duplication of effort.' Id. It would '"avoid circuity of actions and ... enable the court to settle all related claims in one action and thereby avoid a wasteful multiplicity of litigation on claims that arose from a single transaction or occurrence."' 806 So. 2d at 379 (quoting Grow Grp., Inc. v. Industrial Corrosion Control, Inc., 601 So. 2d 934, 936 (Ala. 1992)). Accordingly, Precision's claims against Nautilus meet the logical-relationship test and are therefore compulsory counterclaims in the federal action. This Court's caselaw in similar cases between an insurer and its insured is in accord. See, e.g., Brooks Ins. Agency, 125 So. 3d at 710 (holding that, under § 6-5-440, the insurer's first-filed, declaratory-judgment action in federal court precluded the insured's later-filed, state-court action because 'all the claims in both the federal court and the state court arise from the same facts and circumstances -- Nationwide's issuance of the insurance policies to Guster and its handling of Guster's ... claim'); Cincinnati Ins. Cos., 806 So. 2d at 381 (holding that the insured's state-court claims that 'depend[ed] on the homeowner's policy' that was the subject of the insurer's first-filed, declaratory-judgment action in federal court 'meet the logical-relationship test' and noting that '[i]t would have served the purposes of Rule 13[, Ala. R. Civ. P.,] for [the insured] to have litigated her claims against [the insurer] in the same action in which [the insurer] sought a declaration of its rights and obligations under the homeowner's insurance policy; it would have avoided a multiplicity of actions, and all matters could have been resolved in one action'); and Canal Ins. Co., 534 So. 2d at 583 (holding that, under § 6-5-440, the insurer's first-filed, declaratory-judgment action in federal court precluded the insured's later-filed, state-court action in a case where '[t]he facts and circumstances alleged in support of [the insured's] complaint arose out of the issuance of the insurance policy and the proof of loss claim filed with [the insurer]').

21

"Because the federal action had been filed and was pending when Precision filed the state action, and because the claims Precision asserted against Nautilus in the state action are compulsory counterclaims in the federal action, Nautilus has demonstrated that it has a clear legal right under § 6-5-440 to dismissal from the state action. Accordingly, we grant the petition and issue the writ directing the trial court to enter an order dismissing Nautilus from the state action."

Nautilus, 260 So. 3d at 827-31.

As in Nautilus, "the crux of the federal[-court] action is [National Trust's] obligations, if any, and [Whaley's] rights, if any, under" the subject policies. 260 So. 3d at 830. Additionally, Whaley's breach-of-contract and bad-faith claims in the state-court action that arise out of Whaley's claim for indemnification for the amount it had paid to settle Lockheed Martin's indemnity claim against it are based upon National Trust's refusal to perform its alleged obligations under the subject policies. Accordingly, the claims in National Trust's federal-court action and Whaley's third-party breach-of-contract and bad-faith claims in the state-court action that are based on National Trust's refusal to indemnify Whaley for the amount it had paid to settle Lockheed Martin's indemnity claim against it "'"arose out of the same aggregate core of operative facts."' Cincinnati Ins. Cos., 806 So. 2d at 380 (quoting Canal Ins., 534 So. 2d at 584)." Nautilus, 260 So. 3d at 830.

In its answer to the mandamus petition, Whaley asserts that, because its claim for indemnification for the amount it had paid to settle Lockheed Martin's indemnity claim did not exist at the time National Trust filed its original complaint in the federal-court action, its breach-of-contract and bad-faith claims were not compulsory counterclaims in the federal-court action.

Rule 13(a), Ala. R. Civ. P., provides, in pertinent part:

"'A pleading shall state as a counterclaim any claim <u>which at the time of serving the pleading the pleader has against any opposing party</u>, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."

(Emphasis added.)

"Certainly, the mandate for compulsory counterclaims is not triggered as to causes of action unaccrued at the time of the adjudication of the insurer's initial action. Indeed, the words 'any claim which ... the pleader has' contemplates as much.

"The question, then, is did the insureds have a cause of action for bad faith (i.e., had the tort of bad faith claim accrued) at the time of the filing or pendency of the declaratory judgment suit?"

<u>Safeco Ins. Co. of Am. v. Sims</u>, 435 So. 2d 1219, 1222 (Ala. 1983).

"As stated in 6 Charles Alan Wright et al., <u>Federal Practice and Procedure: Civil</u> § 1411 (2d ed. 1990):

23

> "'[T]he party need not assert a counterclaim that has not matured at the time he serves his pleading. This is derived from the language in the rule limiting its application to claims the pleader has "at the time of serving the pleading." A counterclaim acquired by defendant after he has answered will not be considered compulsory, even if it arises out of the same transaction as does plaintiff's claim.'
>
> "(Footnotes omitted.) See also Wells v. Geneva County Bd. of Educ., 646 So. 2d 98, 99 (Ala. Civ. App. 1994)('The proper time to assert a counterclaim is in the responsive pleading ....')."

Liberty Mut. Ins. Co. v. Wheelwright Trucking Co., 851 So. 2d 466, 484 (Ala. 2002). "[T]he determination of whether a compulsory counterclaim exists is made at the time at which the potential counterclaimant must file an answer. Brooks v. Peoples National Bank of Huntsville, 414 So. 2d 917, 920 (Ala. 1982)." Sanders v. First Bank of Grove Hill, 564 So. 2d 869, 872-73 (Ala. 1990).

> "The cause of action for bad faith refusal to honor insurance benefits accrues upon the event of the bad faith refusal, or upon the knowledge of facts which would reasonably lead the insured to a discovery of the bad faith refusal. Dumas v. Southern Guaranty Insurance Co., 408 So. 2d 86 (Ala. 1981)."

Safeco, 435 So. 2d at 1222. Additionally, "[i]t is well settled that a cause of action for breach of contract accrues when the contract is breached." Wheeler v. George, 39 So. 3d 1061, 1084 (Ala. 2009).

24

Whaley's claim for indemnification for the amount it paid to settle Lockheed Martin's indemnity claim against it did not exist at the time Whaley filed its answer to National Trust's original complaint in the federal-court action. However, National Trust filed an amended complaint in the federal-court action on October 20, 2022. In its amended complaint, National Trust dismissed Lockheed Martin as a respondent, noting that Lockheed Martin had been dismissed from the state-court action and that, "based on information and belief," Lockheed Martin had "assigned certain rights to Whaley." On November 7, 2022, Lockheed Martin filed an "Assignment of Cross-Claims" in the state-court action. In its assignment, Lockheed Martin asserted:

> "For value received <u>and for reimbursement [of] legal fees and expenses Lockheed Martin Corporation incurred in defending the above-captioned civil action</u>, the cross-claimant, Lockheed Martin Corporation, and hereby assigns whatever claims it has in the Answer & Cross-Claim it filed against Whaley Construction Company, Inc., Central Alabama Metal & Roofing Co., Inc., Smith's Inc. of Dothan, Inc., Phoenix II Contracting, L.L.C., and South East Personnel Leasing, Inc. … to Whaley Construction Company, Inc. It is further stipulated and agreed that said that said claims shall be prosecuted in the name of Whaley Construction Company, Inc. and the cross-claimant, Lockheed Martin Corporation shall be dismissed from this action."

25

(Emphasis added.) Additionally, in its third-party complaint in the state-court action, Whaley asserted:

> "12. Whaley demanded that the Insurers provide insurance coverage to Whaley for indemnifying Lockheed [Martin] its defense costs. The Insurers refused.
>
> "13. Whaley provided notice to the Insurers that it was going to reimburse Lockheed [Martin] for its defense costs and provided the Insurers an opportunity to do so prior to Whaley doing so."

Thus, the facts before this Court demonstrate that Whaley's breach-of-contract and bad-faith claims based on National Trust's refusal to indemnify Whaley for the amount it had paid to settle Lockheed Martin's indemnity claim against it had accrued before Lockheed Martin filed its "Assignment of Cross-Claims" in the state-court action on November 7, 2022. However, Whaley did not file its answer to National Trust's amended complaint in the federal-court action until November 14, 2022. Thus, Whaley's breach-of-contract and bad-faith claims based on National Trust's refusal to indemnify Whaley for the amount it had paid to settle Lockheed Martin's indemnity claim against it had accrued before Whaley filed its answer to National Trust's amended complaint in the federal-court action. Accordingly, Whaley's argument in this regard is without merit.

26

Based on the foregoing, Whaley's breach-of-contract and bad-faith claims in the state-court action that were based on National Trust's refusal to indemnify Whaley for the amount it had paid to settle Lockheed Martin's indemnity claim against it are compulsory counterclaims in the federal-court action. Because the federal-court action had been commenced and was pending at the time Whaley filed its third-party complaint in the state-court action, National Trust has a clear legal right to the dismissal of Whaley's breach-of-contract and bad-faith claims in the state-court action that were based on National Trust's refusal to indemnify Whaley for the amount it had paid to settle Lockheed Martin's indemnity claim against it pursuant to § 6-5-440.

B.

In its third-party complaint in the state-court action, Whaley also alleged: "If Whaley is found liable for the injuries and death of Bozeman, the Insurers are required to indemnify Whaley from any judgment which may be entered against it or to indemnify Whaley from any settlement of Bozeman's claim." In its breach-of-contract claim, it further alleged:

"19. The Insurers agreed to defend and indemnify Whaley. [National] Trust has agreed to defend Whaley under a reservation of rights. [Continental] refused to defend and indemnify Whaley.

27

"20. In the event that Whaley enters into a settlement to settle the Bozeman claims, the Insurers are obligated to indemnify Whaley for any such settlement.

"21. In the event that Whaley is found liable for the Bozeman claims, the Insurers are obligated to indemnify Whaley from any judgment entered against.

"22. The Insurers were obligated to defend both Lockheed [Martin] and Whaley and are, therefore, <u>obligated to reimburse Whaley for amounts already incurred in the defense of the Bozeman suit</u> and to reimburse Whaley for what it paid Lockheed [Martin] to indemnify Lockheed [Martin] for its defense costs and the amounts incurred in the future defense of the Bozeman suit."

(Emphasis added.) Finally, in its request for relief in the breach-of-contract claim, Whaley stated:

"Whaley demands judgment against National Trust … and [Continental] in such sums as would indemnify Whaley for any judgment or settlement of the Bozeman claims, reimburse Whaley for the cost of defense, both past, present and future, of Lockheed [Martin] and Whaley to the Bozeman claims, interest, costs, and attorney's fees."

Section 6-5-440 prohibits a plaintiff from prosecuting "two actions in the courts of this state at the same for the same cause and against the same party." There are not any facts before us indicating that National Trust has refused to indemnify Whaley for any judgment against it or any settlement it has reached with regard to the plaintiff's claims against

28

Whaley in the state action. Based on the facts before us, no judgment has been entered against Whaley and no settlement has been reached regarding the plaintiff's claims against Whaley in the state-court action. Additionally, National Trust has not refused to defend Whaley. Rather, it agreed to defend Whaley pursuant to a reservation of rights. Thus, no breach-of-contract or bad-faith-refusal-to-pay claim has accrued regarding any possible refusal to provide indemnification or to provide a defense in the future. Accordingly, those contingent claims would not constitute compulsory counterclaims in the federal-court action. Therefore, Whaley would not be considered a plaintiff in the federal-court action as to those contingent claims, and Whaley is not prosecuting two actions "for the same cause and against the same party" for purposes of the abatement statute with regard to those contingent claims against National Trust. Accordingly, National Trust is not entitled to the dismissal of those contingent claims pursuant to § 6-5-440.

Conclusion

For the above-stated reasons, we grant National Trust's mandamus petition in part and issue a writ directing the circuit court to enter an order dismissing Whaley's breach-of-contract and bad-faith claims in the

state-court action that were based on based on National Trust's refusal to indemnify Whaley for the amount it had paid to settle Lockheed Martin's indemnity claim against it. However, we deny the petition as to Whaley's contingent claims for a defense and indemnification.

PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.

Parker, C.J., and Shaw, Sellers, Mendheim, Stewart, Mitchell, and Cook, JJ., concur.